## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

SOVAN HONG,

      Plaintiff,

v.

RICHEMONT NORTH AMERICA, INC.,
*individually and d/b/a* CARTIER,

      Defendants,

CASE NO.

*Plaintiff Demands a
Trial by Jury*

---

### COMPLAINT AND DEMAND FOR TRIAL BY JURY

Plaintiff, Sovan Hong (hereinafter referred to as "**Plaintif**" and/or "**Hong**"), by and through his counsel, Derek Smith Law Group, PLLC, hereby complains of Defendant Richemont North America, Inc., *individually and d/b/a* CARTIER (hereinafter referred to as "**Defendant**" and/or "**CARTIER**"), and alleges as follows:

### INTRODUCTION

1.     This employment discrimination case is about an employer who subjected its gay employee to relentless harassment, discrimination and retaliation.

2.     Plaintiff Sovan Hong brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.* ("**Title VII**") and 42 U.S.C. § 1981 ("**1981**").

3.     Mr. Hong seeks monetary relief to redress Defendant's unlawful employment practices in violation of Title VII and Section 1981. Additionally, this action seeks to redress Defendant's deprivation of Mr. Hong's personal dignity and his civil right to pursue equal employment opportunities.

4.      Defendant's unrelenting discrimination and harassment against Plaintiff culminated with his unlawful termination.

5.      At bottom, Defendant is liable for subjecting Mr. Hong to a work environment infested with relentless gender/sex discrimination and for wrongfully terminating Plaintiff because of his gender/sex as well as in complaints of unlawful conduct by Defendant.

## PARTIES

6.      At all material times, Plaintiff Sovan Hong (hereinafter referred to as "Plaintiff" or "Hong") is an Asian gay male. Plaintiff Hong was and still is an individual man of Cambodian and Chinese descent residing in Broward County, Florida.

7.      At all times material, Defendant RICHEMONT NORTH AMERICA, INC., was and is a foreign for-profit corporation company existing by the virtues and laws of the State of Delaware.

8.      At all times material, Defendant RICHEMONT NORTH AMERICA, INC. did and continues to do business as "CARTIER" (hereinafter referred to as "CARTIER").

9.      At all times Material, Defendant Cartier operates a store front at 147 N.E. 39th Street, Miami, FL 33137 (hereinafter the "Miami Location").

10.      At all relevant times, Defendant has been continuously doing business in the State of Florida and the City of Miami and have continuously held at least 15 employees throughout all relevant calendar years.

## JURISDICTION AND VENUE

11.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367.  This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and 42 U.S.C. § 1981.

2

12.     Venue is proper in this Court under 28 U.S.C. §1391 because the unlawful employment practices alleged below were committed within the jurisdiction of the United States District Court for the Southern District of Florida, Miami-Dade Division.  Defendant's business was located in this judicial district and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein occurred in this district. Plaintiff was employed by Defendant within Miami-Dade, Florida, located in Miami-Dade County, Florida.

**ADMINISTRATIVE PREREQUISITES**

13.     Plaintiff Hong has complied with all statutory prerequisites to file this action.

14.     On or about June 21, 2020, Plaintiff dual-filed his charge for discrimination with the Equal Employment Opportunity Commission ("**EEOC**") and the Florida Commission on Human Relations ("**FCHR**") against Defendants alleging the facts as set forth herein.

15.     In accordance with and pursuant to the existing workshare agreement between the two agencies, an FCHR filing automatically operates as a dual EEOC filing.

16.     On or about February 2, 2021, the EEOC issued Plaintiff a Right to Sue Letter.

17.     This action is being commenced within ninety (90) days of receipt of the EEOC Right to Sue Letter.

18.     This action is being commenced more than (180) days since the inception of Plaintiff's administrative action against the Defendants.

**STATEMENT OF MATERIAL FACTS**

19.     In or around November 11, 2019, Mr. Hong was hired by CARTIER as a "Sales Associate."

20.     Mr. Hong began his employment with CARTIER, after engaging in a comprehensive interview process and making the decision to move across the country specifically for this new opportunity.

21.     Upon arriving at the Miami Location, Mr. Hong quickly became aware that the assurances of an excellent opportunity that he received from Defendant CARTIER's hiring team were far from reality.

22.     As an initial matter, Defendant CARTIER frequently failed to provide Mr. Hong with proper lunch/rest breaks. Furthermore, on the occasions when Mr. Hong would attempt to take a break, Defendant CARTIER's Managers would interrupt Mr. Hong, demanding her return to work and assist customers, despite other sales associates being available.

23.     Frustrated by this experience, Mr. HONG relayed his concerns to Senior Sales Associate, STEVE MCCORD (hereinafter referred to as "McCord").

24.     McCord advised Mr. HONG that CARTIER does not take fifteen (15) minute breaks.

25.     While conversing with McCord, Mr. Hong advised that he lives in Wilton Manors. MCCORD stated to Mr. HONG that Wilton Manors was "**FULL OF GAYS**," and referred to the City as "**FAIRY LAND**."

26.     Mr. Hong was and still is an open gay man, and, as a result, was open with his colleagues and managers about his sexuality.

27.     Upon hearing the comments from Mr. McCord, Mr. Hong cringed and walked away in an effort to avoid an escalating conflict.

28.     Despite his best efforts, Mr. Hong could not shake the discomfort of the comments made by Mr. McCord.

29.      On or around one week later, Mr. HONG was pulled into the management office by Assistant Manager ALICE SCHNELLBACH (hereinafter referred to as "Schnellback").

30.      Ms. Schnellback wanted to touch base with Mr. Hong regarding his thirty (30) day review. To Mr. Hong's surprise, Ms. Schnellback advised Mr. Hong that he was "too stressed" and needed to "relax about things."

31.      Ms. Schnellback also added that Mr. Hong was a new employee and that he should refrain from discussions regarding his presence or others comments in the store. Ms. Schnellback made it clear that Mr. Hong should remain silent regarding his concerns.

32.      Mr. Hong was floored by the threat and felt extremely disturbed with Schnellback's comments. Ms. Schnellback's assertion made Mr. Hong feel inferior, and as though his concerns were not important enough or valid.

33.      Throughout the course of his employment, Mr. Hong was subject to regular ridicule and unwelcome derogatory comments regarding his sexual orientation, race and/or national origin.

34.      By means of example and not meant to be an exhaustive list, Mr. Hong's colleagues target him when an assumed Asian customer entered the Miami Location. When such a customer would enter the store, Mr. Hong's colleagues would chuckle and quip, stating "**GO HELP YOUR FAMILY, THEY JUST WALKED IN.**"

35.      Defendants' employees would further "joke" and ridicule the customers, referring to them as "**XIE XIE**."

36.      These derogatory and racist comments happened daily throughout Mr. Hong's shifts at the Miami Location despite the presence of Managers, Mr. Hong's frequent requests that Defendants' employees stop their offensive comments. In fact, Defendant Cartier's Managers seemed to encourage the unlawful conduct and comments by their employees.

37.     On one such occasion, Mr. Hong was completing a sale valued at approximately ten thousand ($10,000.00) dollar to an Asian family. As he was finalizing the sale, Defendant Cartier's Sales Associate, VICTORIA (Last name unknown) asked Mr. Hong, in the presence of co-workers and managers, "**HOW DID YOU SELL THAT TO YOUR MOM?**"

38.     Following this comment, the harassment began to increase drastically, irreparably damaging his employment relationships. Mr. Hong began to live in a world of constant, unrelenting humiliation while at work.

39.     Sales Associates at the Miami Location began to call Mr. Hong "**MISS. SAIGON**," an extremely offensive and pejorative term intended to publicly demeans Mr. Hong both for his sexuality and his race/national origin. The history of MISS SAIGON is that of a musical tale that tells the tragic tale of a doomed romance involving an Asian woman abandoned by her American lover.

40.     Mr. Hong would at all times insist his colleagues treat him respectfully and by his name, to no avail. In fact, Mr. Hong's colleagues were fully aware of his discomfort and displeasure with their "nicknames" and treatment of him at work but refused to treat him with the same respect as his other colleagues.

41.     Having reached his breaking point, Mr. Hong spoke with his colleague ARMANDO (Last name unknown). To Mr. Hong's surprise, ARMANDO laughed off Mr. Hong's concerned, advising him to engaged in the ridicule and banter. In fact, ARMANDO advised Mr. Hong that, "**IT'S OKAY. YOU CAN CALL BEATRICE MISS BRAZIL**."

42.     Throughout the course of the unlawful harassment, Mr. Hong's managers and senior staff were fully aware of the harassment. Despite their knowledge, Defendant Cartier's managers failed to take any corrective measures, allowing the conduct to escalate.

43.     In fact, having observed the above events, Defendant Cartier's Senior Sales Associate, SUEN (LAST NAME UNKNOWN), expressly informed Mr. Hong that he was "too up tight and serious." SUEN attempted to *explain* the comments, stating "They are just joking" and "you need to loosen up and joke along with them."

44.     At all times material, it was clear to Mr. Hong that if he did not engage in the unlawful banter and offensive insults, he would not be welcomed into the work environment.

45.     On another occasion, Mr. HONG was conducting inventory at the store. While Mr. Hong was working, and in the presence of the entire staff, a Sales Associate began to interrogate, "**HOW ARE YOU MISS SAIGON? HOW WAS YOUR DAY MISS SAIGON**?" Despite the discomfort and humiliation, Mr. Hong ignored the questioning, instead focusing on his work. Mr. Hong's Store Director, CYNTHIA FISKE (hereinafter referred to as "FISKE") immediately began to laugh at the comments which encouraged the other Sales Associates to join her and further ridicule Mr. Hong.

46.     Following conducting the inventory check and during the course of a full staff meeting, Mr. Hong attempted to change the conversation, instead asking his colleagues if they intended to UBER to their upcoming company dinner. STEVE (Last name unknown) quickly responded, "WOW, YOU JUST LIKE TO BOSS PEOPLE AROUND. LET ME GIVE YOU A WHISTLE AND CLIP BOARD." FISKE began to laugh yet again in front of the team making Mr. HONG feel outcasted and embarrassed and stated "OH, YOU NOTICED THAT TOO, HUH?"

47.     On or around the day of the company dinner, ARMANDO began to ridicule Mr. Hong. ARMANDO made a derogatory gesture with his right hand, fluttering up and down like a fairy. FISKE, who was present, began to laugh and clap as though she were amused, adding only

fuel to the fire rather than stopping the openly hostile treatment. Mr. HONG sharply respond, "That's not me" and insisted ARMANDO stop. Mr. HONG felt violated and attacked due to his sexual orientation.

48.     A week later, Mr. HONG was called into the management office by FISKE and ALEXANDRIA RAGAZZI CHIANESE (hereinafter referred to as "CHIANESE"). They advised Mr. HONG that he did not pass his probationary period. When asked why Mr. Hong was being terminated, FISKE responded with "YOU ARE TOO CASUAL AND NOT THE RIGHT FIT."

49.     On or around January 17, 2020, Defendant Cartier, by and through its owners and managers, unlawfully terminated Mr. Hong because sexual orientation, race and national origin.

50.     Defendant Cartier's decision to terminate Mr. Hong was based on his refusal to engage in a work environment with relentless discriminatory comments and conduct towards and in retaliation for his objections to the aforementioned unlawful conduct and comments.

51.     In fact, following his termination, Defendant Cartier's Assistant Store Manager, ALEX (LAST NAME UNKNOWN), escorted Mr. Hong from the building. As they walked to the elevator, ALEX apologized to Mr. Hong, explaining how she wished she could do more but because she was new, she was afraid to create further conflict. ALEX attempted to comfort Mr. Hong, insisting the decision was not based on his performance and/or sale numbers.

52.     At all relevant times, Plaintiff was and continued to be qualified for the position he held and for the various positions he maintained with Defendant.

53.     The aforementioned allegations are just some of the examples of the discrimination and retaliation Mr. Hong suffered at the hands of the Defendant and are not an exhaustive list of Plaintiff's experiences of discrimination and harassment while employed with Defendant.

54.     Plaintiff believes he has been discriminated and retaliated against in violation of Title VII and Section 1981.

55.     Additionally, Mr. Hong further claims a continuous practice of discrimination and continuing violations and makes all claims herein under the continuing violations doctrine. Defendant has exhibited a pattern and practice of unlawful discriminatory conduct.

56.     As a result of the acts and conduct complained of, Mr. Hong has suffered and will continue to suffer loss of income, loss of salary, bonuses, benefits, and other compensation which such employment entails.   Mr. Hong also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

57.     Mr. Hong suffers from increased stress and anxiety.   Similarly, Mr. Hong has trouble sleeping as a result of Defendant's unlawful conduct.   Mr. Hong is nervous that he will be unable to find work again.   However, Mr. Hong is determined to find work and to pursue employment in a workplace that treats individuals with respect and dignity.

58.     Further, as a result of Defendant's unlawful employment practices, Mr. Hong felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

59.     As Defendant's conduct has been malicious, willful, extreme and outrageous, and with full knowledge of the law, Mr. Hong seeks punitive damages, jointly and/or severally against Defendants.   Mr. Hong has presented factual allegations that would permit any reasonable jury to award damages.

60.     At bottom, Defendant is liable for their reckless disregard for Mr. Hong's personal dignity and his civil right to pursue equal employment opportunity.

61.     Mr. Hong has suffered damages as a result of Defendant's unlawful employment practices.

## COUNT ONE
### *Cause of Action for Discrimination Under Title VII for Disparate Treatment Based*

62.     Plaintiff reincorporates the allegations in the previous paragraphs.

63.     Defendant Cartier is prohibited under the Title VII from discriminating against Plaintiff because of his sex/gender, race/national origin, in addition to his sexual orientation with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

64.     Title VII states in relevant parts as follows: § 2000e-2. *[Section 703]*:

"(a) Employer practices It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

65.     Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against Plaintiff because of his sex/gender, race/national origin in addition to his sexual orientation.

66.     At all times relevant, Defendant, by and through its employees, intended to unlawfully discriminate against Plaintiff Hong in the terms and conditions of his employment because of his gender/sex, race/national origin and sexual orientation, and Defendant did unlawfully discriminate against Plaintiff Hong in the terms and privileges of his employment because of his gender/sex, race/national origin and sexual orientation in violation of the Title VII.

67.     The discriminatory and disparate treatment of Plaintiff included, but was not limited to, unlawfully terminating Plaintiff because of his gender/sex, race/national origin and sexual orientation.

68.     The discriminatory actions of Defendant against Plaintiff, as described and set forth above, constitute an adverse employment action for purposes of Title VII.  In subjecting Plaintiff to adverse employment action, Defendant intentionally discriminated against Plaintiff with respect to the compensation, terms, conditions, or privileges of his employment.

69.     Defendant violated the Title VII by unlawfully discharging and discriminating against Plaintiff based his sex/gender, race/national origin and sexual orientation, of which the Defendant was fully aware.

70.     As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Title VII, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.  Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

71.     Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

72.     Conduct of Defendant Cartier and/or its agents deprived Plaintiff of his statutory rights guaranteed under Title VII.

73.     Plaintiff further requests that his attorney's fees and costs be awarded as permitted by law.

## COUNT TWO
*Cause of Action for Discrimination Under Title VII for Hostile Work Environment*

74.     Plaintiff reincorporates the allegations in the previous paragraphs.

75.     Defendant Cartier is prohibited under the Title VII from discriminating against Plaintiff because of his sex/gender, race/national origin, in addition to his sexual orientation with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

76.     Title VII states in relevant parts as follows: § 2000e-2. *[Section 703]*:

"(a) Employer practices It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

77.     Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by subjecting Plaintiff to a hostile work environment based solely on his sex/gender, race/national origin, in addition to his sexual orientation.

78.     Plaintiff Hong was subject to unwelcome, offensive, and harassing discriminatory conduct during her employment with Cartier and this conduct was directed to and perpetuated upon Plaintiff because of his sex/gender, race/national origin, in addition to his sexual orientation.

79.     As a result, Defendant Cartier subjected and permitted its employees to expose Plaintiff to discrimination and unlawful discharge.

80.     Cartier was notified about and was otherwise aware of the discriminatory conduct and policies directed at Plaintiff Hong by Defendant's employees and failed to take appropriate corrective action.

81.     Defendant violated the Title VII by unlawfully discharging and discriminating against Plaintiff based his sex/gender, race/national origin, in addition to his sexual orientation, of which the Defendant was fully aware.

82.     As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Title VII, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.  Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

83.     Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

84.     Conduct of Defendant Cartier and/or its agents deprived Plaintiff of his statutory rights guaranteed under Title VII.

85.     Plaintiff further requests that his attorney's fees and costs be awarded as permitted by law.

## COUNT THREE
### Cause of Action for Retaliation Under Title VII

86.     Plaintiff reincorporates the allegations in the previous paragraphs.

87.     Title VII prohibits retaliation against an employee for opposing conduct which would violate the terms of Title VII.

88.     Plaintiff opposed discriminatory conduct by Defendant which is prohibited by Title VII when she complained to Defendant about the discrimination and hostile work environment that he was subjected to as described and set forth above.

13

89.      Plaintiff's complaints about Defendant's unlawful and discriminatory actions, therefore, constituted protected activity under Title VII.

90.      At all times relevant, Plaintiff Hong acted in good faith and with the objective and subjective belief that Defendant Cartier's employees violated of the law and his protected rights.

91.      After expressing his opposition to the unlawful discriminatory conduct, Defendant retaliated against Plaintiff by among other things, wrongfully and unlawfully terminating Plaintiff's employment.

92.      The adverse employment actions by Defendant were the result of Plaintiff's opposition to the discriminatory conduct to which she was subjected, in violation of Title VII.

93.      Defendant's alleged bases for its adverse employment actions against Plaintiff are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

94.      Defendant Cartier's employees unlawfully retaliated against Plaintiff Hong because he opposed a practice made unlawful by Title VII. Defendant Cartier would not have terminated Plaintiff Hong but for his opposition.

95.      As a result of Defendant's retaliatory conduct in violation of Title VII, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.  Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

96.      Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiffs rights under Title VII.  Accordingly, Plaintiff also requests punitive damages as authorized by Title VII.

97.     Plaintiff further requests that his attorney's fees and costs be awarded as permitted by law.

## COUNT FOUR
### *Race Discrimination (Discrete Act/Unlawful Termination) in Violation of* § 1981

98.     Plaintiff reincorporates the allegations in the previous paragraphs.

99.     This is an action for discrimination and harassment because of Plaintiff's race in violation of Section 1981. 42 USC Section 1981 states in relevant part as follows:

(a) Statement of equal rights All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.A. § 1981.

100.     Plaintiff, as a member of the Asian-American race, was discriminated against by Defendant because of his race as provided under 42 USC Section 1981 and has suffered damages as set forth herein.

101.     Defendant constantly enforced a purposefully discriminatory pattern and practice of Black employees of the equal rights described therein, in further violation of 42 U.S.C. §1981.

102.     Plaintiff is an Asian-American man and is protected under Section 1981.

103.     At all times relevant, Plaintiff was treated differently because of his race.

104.    Defendant unlawful and wrongfully terminated Plaintiff because of his race.

105.    As a result of Defendant's discrimination in violation of Section 1981, Plaintiff has been denied the enjoyment of all benefits, privileges, terms, and conditions of Plaintiff's contractual relationship which provided substantial compensation and benefits, thereby entitling her to injunctive and equitable monetary relief; and having suffered such anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of Defendant's actions, thereby entitling Plaintiff to compensatory damages.

106.    As alleged above, Defendant acted with malice or reckless indifference to the rights of the Plaintiff and copious other individuals named herein, thereby entitling Plaintiff to an award of punitive damages.

107.    Defendant violated the above and Plaintiff suffered numerous damages as a result.

108.    Plaintiff makes a claim against Defendant under all of the applicable paragraphs of 42 U.S. Code § 1981.

109.    Plaintiff claims Defendant both unlawfully discriminated against Plaintiff and unlawfully retaliated against Plaintiff in violated of 42 USC 1981.

## COUNT FIVE
### *Race Discrimination (Hostile Work Environment)*
### *in Violation of* § 1981

110.    Plaintiff reincorporates the allegations in the previous paragraphs.

111.    This is an action for discrimination and harassment because of Plaintiff's race in violation of Section 1981. 42 USC Section 1981 states in relevant part as follows:

    (a) Statement of equal rights All persons within the jurisdiction of the

    United States shall have the same right in every State and Territory to make

    and enforce contracts, to sue, be parties, give evidence, and to the full and

equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. (b) "Make and enforce contracts" defined For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.A. § 1981.

112. Here, Defendant's conduct occurred because of Plaintiff's legally protected characteristic; and (2) was severe or pervasive enough to make a reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile or abusive.

113. The harassing conduct was directly connected to Plaintiff race.

114. Defendant's employees regularly harassed Plaintiff because of his race and his complaints of discrimination.

115. Defendant's employees regularly made discriminatory comments about Plaintiff on account of his race.

116. Defendant's discriminatory conduct was not welcomed by Plaintiff.

117. As a result of the hostile work environment, Plaintiff suffered a "tangible employment action" defined as a significant change in employment status, failure to promote, reassignment with significantly different responsibilities, and/or a decision causing a significant change in benefits.

118.    Defendant failed to exercise reasonable care to prevent racial harassment in the workplace by failing to establish an explicit policy against harassment in the workplace on the basis of race, failing to fully communicate the policy to its employees, and/ or failing to provide a reasonable way for Plaintiffs to make a claim of harassment to higher management, and failing to take reasonable steps to promptly correct the harassing behavior raised by Plaintiff.

119.    As a result of Defendant's violations of § 1981, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, mental pain and suffering; humiliation; emotional distress; diminishment of career opportunities; harm to business reputation; loss of self-esteem; disruption to her family life; and other harm, pain and suffering, both tangible and intangible.

## COUNT SIX
### *Cause of Action for Retaliation Under Title VII*

120.    Plaintiff reincorporates the allegations in the previous paragraphs.

121.    This is an action for retaliation by Defendant against Plaintiff in violation of Section 1981.

122.    Defendant discriminated against and subjected Plaintiff to hostile work environment because his race.

123.    Plaintiff complained about the discriminatory treatments he received based on his race.

124.    The retaliatory actions taken against Plaintiff would deter a reasonable person from making or maintaining a complaint of discrimination and/or harassment against Defendant.

125.    Plaintiff has been damaged as a direct and proximate result of Defendant's illegal employment practices, including suffering economic damages, compensatory damages, emotional

pain and suffering, inconvenience, mental anguish, outrage, loss of enjoyment of life, loss of

dignity, and other non-pecuniary losses and tangible injuries.

## DEMAND FOR JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment against

Defendants for all damages suffered by Plaintiff, including economic damages, lost wages (back

pay and front pay) and benefits, liquidated damages, statutory damages, compensatory damages,

emotional distress damages, punitive damages, interest, attorney's fees and costs, disbursements

of action, and any other remedies (monetary and/or equitable) allowable by law as a result of

Defendant's conduct in violation of both Title VII.


Dated:  Miami, Florida                                    **DEREK SMITH LAW GROUP, PLLC**
        May 3, 2021

                                                          _____
                                                          Caroline H. Miller, Esq.
                                                          701 Brickell Ave, Suite 1310
                                                          Miami, FL 33131
                                                          Tel: (305) 946-1884
                                                          Fax: (305) 503-6741
                                                          Caroline@dereksmithlaw.com

                                                          *Counsel for Plaintiff*